## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CURTIS GIBBS,

       Plaintiff,

vs.                                 Case No. 3:13-cv-838-J-32JBT

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
HERITAGE BANK OF NORTH
FLORIDA,

       Defendant.

_____

## <u>ORDER</u>

This case is before the Court on Plaintiff Curtis Gibb's Motion to Withdraw Plaintiff's Request for Dismissal Pursuant to Rule 41 ("Motion to Withdraw") (Doc. 9); the Response to Plaintiff's Motion to Withdraw Plaintiff's Request for Dismissal Pursuant to Rule 41, in the Alternative for Summary Judgment and Supporting Memorandum of Law ("Motion for Summary Judgment") (Doc. 15) filed by Defendant Federal Deposit Insurance Corporation, as Receiver for Heritage Bank of North Florida ("FDIC"); Plaintiff's Motion for Leave to Re-File Plaintiff's Request for Dismissal Pursuant to Rule 41(a) and Objection to Defendant's Response ("Motion for Leave") (Doc. 16); Plaintiff's Supplemental Response to Defendant's Response to Plaintiff's Motion to Withdraw Plaintiff's Request for Dismissal Pursuant to Rule 41, in the Alternative for Summary Judgment and Supporting Memorandum of Law ("Supplemental Response") (Doc. 24); and FDIC's Motion for Injunctive Relief and Restraining Order ("Motion for Restraining Order") (Doc. 19). Upon due consideration,

the Court rules as follows.

## I.   BACKGROUND

Though this case has been pending in this Court a relatively short time, its complete history is longer and more complicated.  Gibbs first filed his suit in the Fourth Judicial Circuit for Duval County, Florida on February 18, 2011.  (Doc. 1-2.) In his complaint, Gibbs alleges that, in September 2010, Heritage Bank of North Florida wrongfully evicted him from the property at 206 Arlington Road, Jacksonville, Florida ("subject property), which he had contracted to purchase from Heritage Bank and was leasing and had possession of pending the closing of the sale. (Doc. 2.)  Gibbs alleges that, through no fault of his own, the closing never happened, but he remained in possession of the property, first under the terms of the lease and then pursuant to a month-to-month periodic tenancy when the written lease expired.  (Id. at ¶¶ 10-15.) Gibbs alleges that Heritage Bank then unlawfully evicted him from the property and destroyed all the personal property he had inside the building on the property.  (Id. at ¶¶ 19-28.)  His complaint seeks damages for the loss of his personal property.  (Id. at ¶ 28.)

The state court docket does not evidence much activity.  Gibbs's counsel apparently withdrew on July 5, 2012, and Gibbs appears to have proceeded pro se after that.  (See Doc. 1-1; Doc. 11.)  At some point, Heritage Bank fell into insolvency, and, on April 19, 2013, FDIC was appointed as a receiver for the bank.  (Doc. 15 at ¶ 2.) Subsequently, FDIC substituted into the state case (Doc. 1-1) and, on July 16, 2013, removed the case to this Court.  (Doc. 1.)

On August 5, 2013, FDIC filed a Notice of Filing Plaintiff's Request for Dismissal with Prejudice Pursuant to Rule 41(a)(2). (Doc. 7.) The request attached to the notice stated that Gibbs and FDIC had administratively resolved Gibbs's claim and requested that the case be dismissed with prejudice. (Doc. 7-1.) Accordingly, on August 6, 2013, the Court dismissed the case with prejudice. (Doc. 8.) The very next day, however, Gibbs filed the Motion to Withdraw, stating that a complete settlement had not been reached and that he did not wish to close this case. (Doc. 9.) At the same time, though, he filed a document requesting a $28,490.00 payment by FDIC for the amount of the claim that FDIC had allowed against the receivership of Heritage Bank. (Doc. 10.) In light of these filings, the Court ordered FDIC to file a response advising the Court of its position. (Doc. 12.)

Before FDIC was due to file its response, Gibbs filed a document offering to purchase the subject property "as is," with the purchase money coming in the form of a credit against a settlement of his claim against FDIC. (Doc. 14.) FDIC did not respond to that filing but, on August 16, 2013, did timely file the response ordered by the Court. (Doc. 15.) In its response, FDIC argues that Gibbs should not be permitted to withdraw his request for dismissal because his claim had indeed been administratively resolved and that, in the alternative, the administrative resolution of his claim dictated entry of summary judgment in FDIC's favor. (Id. at 3-9.)

On August 23, 2013, Gibbs filed a response to FDIC's response and motion for summary judgment. (Doc. 16.) According to Gibbs, he did not knowingly participate in the administrative resolution process; instead, FDIC tricked him into requesting

3

that the case be dismissed by promising him immediate cash payments for his claim and by holding out the possibility that he might yet be able to buy the subject property. (Id.)

On October 18, 2013, FDIC filed a motion for a restraining order prohibiting Gibbs from coming within 1,000 feet of the subject property or contacting anyone working for FDIC or any of its brokers marketing the property.  (Doc. 19.)  In the motion, FDIC alleges that Gibbs has been unlawfully living on the property and harassing FDIC's representatives.  (Id.)

On October 25, 2013, the Court held a hearing on all pending motions. (Doc. 21.) Gibbs had a full opportunity to explain his position and the history of the case.  FDIC had a full opportunity to respond with its position on these issues.  In light of the discussion, the Court directed Gibbs to advise the Court by December 1, 2013 whether he wished to continue pursuing his motions to vacate the dismissal of the case.  (Id.)

On December 1, 2013, Gibbs filed a notice advising that he intended to continue to seek to vacate the dismissal and to continue with his claims in this case. (Doc. 22.) The Court subsequently entered an order notifying the parties of their rights and the consequences with respect to FDIC's motion for summary judgment and gave Gibbs until January 24, 2014 to file any supplemental response to the motion along with any supporting materials. (Doc. 23.)

Gibbs timely filed a supplemental response in opposition to FDIC's motion for summary judgment. (Doc. 24.) In his response, Gibbs does not dispute the background facts of the case, but does challenge the authenticity and sufficiency of certain

4

documents FDIC has submitted as proof that his claim has been administratively resolved by the FDIC.  (<u>Id.</u> at 2-3.)  Gibbs also argues that the law allows him to continue his suit, filed before the FDIC was appointed receiver, while pursuing his administrative claim with the FDIC.  (<u>Id.</u> at 4-6.)  With this submission, the motions are now ripe for ruling.

## II.    ANALYSIS

### A.    Gibbs's Requests to Withdraw Dismissal

The Court first briefly addresses together Gibbs's Motion to Withdraw and Motion for Leave.  These short <u>pro se</u> filings do not identify a specific legal basis for setting aside the dismissal, but the Court construes them together as a request for relief under Federal Rule of Civil Procedure 60(b).

Rule 60(b) provides that, among other reasons, a court may order relief from a judgment or order entered as the result of "mistake, inadvertence, surprise, or excusable neglect," "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).

The Court does not reach Gibbs's allegations that he was tricked into requesting dismissal. (Doc. 16 at 1-2.)  Instead, the Court is sufficiently satisfied that the original request for dismissal and resulting order of dismissal were filed due to mistake or inadvertence.  For one thing, the request itself was filed by FDIC purportedly on behalf of Gibbs and, it appears, was drafted by FDIC for him.  (<u>See</u> Doc. 7, Doc. 7-1.)  Then, on the very next day after the request was filed, Gibbs filed a motion that he drafted

5

himself, requesting that the dismissal be withdrawn because a settlement had not been reached. (Doc. 9.)  Finally, it was clear from the Court's discussion with the parties at the October 25, 2013 hearing that Gibbs likely did not understand or intend the dismissal to end his case completely, and, at the very least, there was no meeting of minds as to whether the case would be dismissed voluntarily.  For these reasons, the Court concludes that the voluntary dismissal should be vacated.

## B.    FDIC's Motion for Summary Judgment

Having addressed the voluntary dismissal, the Court now concludes, however, that FDIC's motion for summary judgment should be granted.  FDIC argues that summary judgment in its favor is appropriate under the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA").  The FIRREA provisions relevant to the instant matter are codified in 12 U.S.C. § 1821(d).  FDIC argues that § 1821(d) creates a mandatory administrative claims process that any claimant against the assets of a failed bank in receivership must exhaust before seeking relief in federal court. (Doc. 15 at 5.)  In FDIC's view, the statute divested courts of jurisdiction over such claims generally, with judicial review coming into play only if the FDIC disallows a claim under this process or has not made a determination on the claim by a certain deadline.  (Id.)  Because Gibbs's claim was allowed in full, no judicial review is available according to FDIC, and even if judgment were eventually entered for Gibbs in this case, § 1821(d)(13)(C) would prohibit him from attaching or executing against the assets of Heritage Bank now in receivership.  (Id. at 6-8.)

Upon review of the relevant Eleventh Circuit precedent, the Court agrees with

6

Gibbs that the Court does have jurisdiction over this lawsuit, which he filed before FDIC was appointed receiver for Heritage Bank.  FIRREA does not automatically divest federal courts of jurisdiction over pre-appointment lawsuits, <u>Aguilar v. FDIC</u>, 63 F.3d 1059, 1062 (11th Cir. 1995), and, in certain circumstances, the district court where the failed bank had its principal place of business may review <u>de novo</u> a claim that has gone through the administrative process.  <u>Bank of Am. Nat'l Ass'n v. Colonial Bank</u>, 604 F.3d 1239, 1244 (11th Cir. 2010); <u>Placida Prof'l Ctr., LLC v. FDIC</u>, 512 F. App'x 938, 945 (11th Cir. 2013); <u>see</u> 12 U.S.C. § 1821(d)(6)(A).  Thus, dismissal of this case on jurisdictional grounds is inappropriate.[1]

Summary judgment in FDIC's favor is appropriate, however.  "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether to grant summary judgment, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor."  <u>WSB-TV v. Lee</u>, 842 F.2d 1266, 1270 (11th Cir. 1988); <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988).

---

[1]  Given the ultimate conclusion reached here, the Court does not undertake a detailed discussion of FIRREA, a statute that the First Circuit first described as, and the Eleventh Circuit later seconded, amounting to "'an almost impenetrable thicket," ensuring that "'confusion over its proper interpretation is not only unsurprising-it is inevitable," with § 1821(d) in particular constituting "'an avalanche of words."' <u>Damiano v. FDIC</u>, 104 F.3d 328, 333 n.7 (11th Cir. 1997) (quoting <u>Marquis v. FDIC</u>, 965 F.2d 1148, 1151 (1st Cir. 1992)).

7

The record demonstrates that Gibbs's claim was fully resolved in the administrative claims process and is now moot.  His complaint in this case requests compensation for the personal property destroyed when he was evicted from the subject property.  (Doc. 2 at ¶ 28.)  Gibbs later filed an administrative claim with FDIC[2] and listed the property destroyed and its estimated value.  (Doc. 15-3.)  FDIC allowed the claim in full in the form of a receivership certificate for $28,490.00 against the distribution of the assets of Heritage Bank.  (Doc. 15-4.)

FDIC is authorized to pay claims in receivership certificates signifying a claim on the eventual distribution of the failed bank's assets.  Placida Prof'l Ctr., LLC, 512 F. App'x at 951; Battista v. FDIC, 195 F.3d 1113, 1121 (9th Cir. 1999).  The claims of a general unsecured creditor such as Gibbs fall under the asset distribution priority set out in § 1821(d)(11)(A), which limits him to a pro rata share of the proceeds after liquidation.[3]  Placida Prof'l Ct., LLC, 512 F. App'x at 951.  Moreover, even if the Court were to find that additional damages were warranted, Gibbs would not be able to attach any resulting judgment as a lien on the assets of Heritage Bank.  12 U.S.C. § 1821(d)(13)(C); Resolution Trust Corp. v. Chesire Mgmt. Co., 18 F.3d 330, 335 (6th Cir. 1994).  Thus, Gibbs has already received the relief he requested, and his claim is now

---

[2] Gibbs challenges the authenticity of the proof of claim materials attached to FDIC's motion (Doc. 24 at 2-3), but actually attached the same documents to his Motion for Leave and identified them as documents he completed and submitted to FDIC.  (Doc. 16 at 2-5, 9-12.)  So, while Gibbs may dispute the effect of these documents, he has admitted their authenticity.

[3] As of the October 25, 2013 hearing, the liquidation had not yet occurred, so the actual amount Gibbs might recover is undetermined.

8

moot.

**C.     FDIC's Motion for Restraining Order**

Finally, the Court declines to enter any restraining order as requested in FDIC's Motion for Injunctive Relief and Restraining Order.  Assuming <u>arguendo</u> that the Court could enter such an order in this case, the undersigned is satisfied with Gibbs's assurances at the October 25, 2013 hearing that he understood that he should not go on the subject property.  Thus, this motion is due to be denied.

In closing, the Court understands Gibbs's frustration here.  Unfortunately, when a bank becomes insolvent, most people involved are not made whole and are disappointed.  Congress enacted FIRREA to make the best of an inherently bad situation.  The Court can only act within the limitations Congress has set.

Accordingly, it is hereby

**ORDERED**:

1.     FDIC's Motion for Injunctive Relief and Restraining Order (Doc. 19) is **DENIED**.

2.     Plaintiff's Motion to Withdraw Plaintiff's Request for Dismissal Pursuant to Rule 41 (Doc. 9) is **GRANTED**.

3.     Plaintiff's Motion for Leave to Re-File Plaintiff's Request for Dismissal Pursuant to Rule 41(a) and Objection to Defendant's Response (Doc. 16) is **GRANTED in part** to the extent that Gibbs's request for dismissal is hereby **WITHDRAWN**, but otherwise **DENIED**.

4.     The August 6, 2013 Order (Doc. 8) is **VACATED**.

5.    Defendant's Response to Plaintiff's Motion to Withdraw Plaintiff's Request for Dismissal Pursuant to Rule 41, in the Alternative for Summary Judgment and Supporting Memorandum of Law (Doc. 15) is **GRANTED in part** and **DENIED in part** as stated herein.

6.    The Clerk is directed to enter judgment in favor of Defendant Federal Deposit Insurance Corporation, as Receiver for Heritage Bank of North Florida, and against Plaintiff Curtis Gibbs and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on this 18th day of February, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

bjb.
Copies:

Counsel of record

Pro se plaintiff

10